UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAROL NANN TURKO,   Civil Action No.: 17-12238
　　　　　　　　　　　　　Honorable Denise Page Hood
　　　　Plaintiff,　　Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

　　　　Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 15, 21]**

Plaintiff Karol Nann Turko appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge (ALJ) properly weighed the medical opinions of record and that her decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 21] be **GRANTED**;

- Turko's motion [ECF No. 15, 16][1] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Turko's Background and Disability Applications

Born July 8, 1962, Turko was 49 years old, which is described as a younger individual ages 18-49, on the date last insured (DLI), December 31, 2014. [ECF No. 12-2, Tr. 33]. Turko subsequently changed her age category to closely approaching advanced age. *Id.*; *see* 20 C.F.R. § 404.1563. Turko alleges a disability due mainly to arthritis and neck pain, with an onset date of December 24, 2011. [*Id.*; ECF No. 12-7, Tr. 205, 209].

After a hearing on September 10, 2015, during which Turko and a vocational expert (VE) testified, the ALJ found that Turko was not disabled at any time from the alleged onset date through the date last insured. [ECF No. 12-2, Tr. 34]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-5]. Turko timely filed for judicial review. [ECF No. 1].

---

[1] Turko's motion for summary judgment is found at ECF No. 15, and her brief in support is separately docketed at ECF No. 16.

2

**B.     The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Turko was not disabled. [ECF No. 12-2, Tr. 34]. At the first step, she found that Turko had not engaged in substantial gainful activity during the relevant period. [ECF No.12-2, Tr. 26]. At the second step, she found that Turko had the severe impairments of "degenerative disc disease and neuropathy." [*Id.*] Next, the ALJ concluded that none of Turko's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 29].

Between the third and fourth steps, the ALJ found that through the last day insured, Turko had the RFC to perform light work,[3] except she required:

> the opportunity to alternate from sitting to standing, and from standing to sitting, for up to 5 minutes approximately every 30

---

[3] "In order to perform a full range of light work, an individual must be able to lift up to 20 pounds, with frequent lifting or carrying of objects weighing up to 10 pounds. Light work requires standing up to six hours of an eight-hour workday. Social Security Ruling (SSR) 83-10, 1983 WL 31251 (1983).

4

>minutes; no climbing of ladders, ropes, or scaffolds; occasional climbing of stairs with railings; occasional crouching, stooping, balancing, and kneeling; no crawling; no overhead reaching, and no more than frequent reaching in other directions; frequent handling, fingering, and feeling; no work around hazards such as unprotected elevations or dangerous moving machinery; and no exposure to vibration.

[ECF No. 12-2, Tr. 29]. At step four, the ALJ found that Turko was not capable of performing her past relevant work as a home attendant and nurse assistant. [*Id.*, Tr. 33]. At the final step, after considering Turko's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were other jobs that existed in significant numbers that Turko could perform, including positions as marker, router, and cashier. [*Id.*, Tr. 34]. As such, the ALJ concluded that Turko was not disabled at any time from the alleged onset date, through the date last insured. [*Id.*]

## II.     ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Turko argues that the ALJ erred by only partially crediting the opinion of her treating physician. Turko also maintains that while the ALJ indicated that she was only partially crediting the opinion of the consulting physician, in fact, the ALJ fully adopted that opinion. The Commissioner responds that the ALJ properly weighed the two, conflicting medical opinions in determining Turko's RFC, which is supported by substantial evidence. The Court agrees that the ALJ did not err in weighing the medical opinions of record and that her decision is supported by substantial evidence.

## A.

In determining Turko's severe impairments, the ALJ comprehensively discussed the medical evidence since 2007, dating back to well before the relevant period. [ECF No. 12-2, Tr. 26-29]. The ALJ cited the evidence that, in April 2007, Turko underwent cervical spine anterior discectomies and fusion with an anterior plate surgery to treat neck pain that radiated to her arms. Post-operative notes indicate that she felt "much better" and "in

6

general feels quite well." [ECF No. 12-8, Tr. 287 & ECF No. 12-10, Tr. 432, 462].

Turko presented to the emergency room again in June 2013 with complaints of neck and shoulder pain. [ECF No. 12-8, Tr. 305-10]. The emergency room doctor noted that while Turko complained of pain, "when distracted she moves her neck completely fine without any obvious pain." [*Id.*, Tr. 306]. In addition, Turko showed good motor tone and had no difficultly moving and handling objects. [*Id.*] When prompted, Turko was able to resist at +5/5 bilaterally in her upper extremities and elbow flexion. [*Id.*, Tr. 307]. She was also able to hold in elbow extension against +5/5 resistance. [*Id.*] Her cervical spine x-rays were also normal. [*Id.*] Turko received a shot of Torodol and was discharged with a prescription for Ibuprofen. [*Id.*, Tr. 308].

In February 2014, Turko's primary care physician, Galen Ebert, D.O., examined her. [ECF No. 12-10, Tr. 426-27]. Turko reported that she had cervical joint and muscle pain. [*Id.*, Tr. 426]. Musculoskeletal and neurological examinations were also within normal limits. [*Id.*, Tr. 427]. Dr. Ebert diagnosed Turko with cervical spondylosis without myelopathy. [*Id.*] On the same day as his examination of Turko, Dr. Ebert completed a medical source statement which indicated that Turko showed good strength

7

in her hands, but she was experiencing pain with decreased range of motion of the elbows and cervical spine on rotation to both sides at 30 degrees. [ECF No. 12-9, Tr. 410-11]. Turko's reflexes in her arms and legs were normal. [*Id.*, Tr. 410]. Dr. Ebert indicated diagnoses of degenerative disease of the cervical spine and chronic pain/arthritis. [*Id.*] Treatment included NSAIDS, Valium, and occasional steroids. [*Id.*] Dr. Ebert opined that Turko could stand 15 minutes and sit for 30 minutes at a time, and could not work any hours in a typical workday. [*Id.*] He reported that Turko could occasionally lift ten pounds and frequently lift five pounds; could also occasionally bend, stoop, raise both arms over shoulder level; and could frequently use both hands for manipulation. [*Id.*] Turko would need to elevate her legs occasionally during the workday. [*Id.*] Dr. Ebert wrote that Turko's pain was moderate to severe, and that she would have difficulty focusing on her job due to pain. [*Id.*] He indicated that her condition did not allow her to work as a nurse's aide due to the need to lift patients. [*Id.*, Tr. 411]. Turko visited Dr. Ebert again in May 2014 to discuss ultrasound results. Her medical history was again reported to be cervical spondylosis without myelopathy with other disc degeneration at C4-C5 and C5-C6. [ECF No. 12-10, Tr. 425-26]. Reported medication included Norco 325 mg every four to six hours as needed. [*Id.*, Tr. 425].

In July 2014, consultative medical examiner Cheryl D. Lerchin, M.D. examined Turko. [ECF No. 12-8, Tr. 325-30]. Dr. Lerchin found that Turko showed a limited range of motion in the cervical spine, though she had a full range of motion in lumbar spine and elbows as did the small joints of her hands. [*Id.*, Tr. 326]. Dr. Lerchin's impressions were chronic neck and back pain status post cervical fusion, with associated complaints of upper extremity pain and aching with no obvious objective examination findings. [*Id.*] Dr. Lerchin opined that due to Turko's prior cervical fusion and possible mild degenerative lumbar spine changes, she would be limited in bending and twisting, and to lifting no more than 25 pounds. [*Id.*]

In May 2015, Turko saw Dr. Ebert again for a physical. [ECF No. 12-10, Tr. 423-24]. Examination revealed reduced cervical spine range of motion, but the remainder of the musculoskeletal and neurological findings were within normal limits. [*Id.*, Tr. 423]. MRI results from May 2015 were consistent with a central disc protrusion at C3-4, mildly effacing the anterior thecal sac. [ECF No. 12-8, Tr. 331-32]. Laboratory results from May 2015 through July 2015, revealed a negative rheumatoid factor. [ECF No. 12-9, 378-87, 387-98]. In July 2015, Turko sought treatment with a new primary care physician, Madhu Subnani, M.D. [*Id.*, Tr. 394]. Records from October 2015, approximately ten months after the last date insured (LDI) indicate

9

that Turko was attending physical therapy with positive results. [*Id.*, Tr. 400].

**B.**

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.*

Turko's argues that the ALJ erred in giving controlling weight to the opinion of consultative examiner Dr. Lerchin rather than to her treating physician Dr. Ebert. But Turko does not cite to Dr. Ebert's opinion or any of the specific limitations identified therein; she does not cite to any medical evidence that supports Dr. Ebert's opinion or any specific limitation; she

10

does not explain how the ALJ improperly evaluated that opinion as against that of Dr. Lerchin; and she does not explain how the ALJ's alleged errors would have affected the ultimate RFC.  In fact, in her six page brief, Turko does not cite to the medical record at all.  After her cursory recitation of the treating physician rule, her entire two paragraph argument consists of nothing more than conclusory allegations.  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (internal quotation marks and citation omitted).  Turko's argument here is both legally and factually lacking, and the Court has no obligation to scour the record on her behalf.  *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011).[4]

---

[4] Attorney Anne C. Sharkey is warned that she may be sanctioned and/or referred for investigation and possible disciplinary action if she files any more briefs of such extraordinarily poor quality. *See Cason v. Comm'r of Soc. Sec.*, No. 15-12661, 2016 WL 4546872, at *2 (E.D. Mich. Sept. 1, 2016) (referring attorney to Chief Judge and Michigan Attorney Grievance Commission for possible disciplinary action); *Swadling v. Comm'r of Soc. Sec.*, No. 14-10251, 2015 WL 1511048, at *2 (E.D. Mich. Mar. 24, 2015) (imposing sanction of $7,500, and referring attorney to Chief Judge for possible disciplinary action).

Turko's argument is also without merit. Indeed, while the Commissioner generally gives more weight to the medical opinion of a treating source, it can reduce the weight afforded where the opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with the other substantial evidence in the claimant's record. *See* 20 C.F.R. § 404.1527(c)(2). As noted above, the ALJ conducted an exhaustive review of the medical evidence and substantial evidence supports his decision to afford partial weight to both Drs. Ebert and Lerchin's opinions. [ECF No. 12-2, Tr. 26-29].

The ALJ credited Dr. Ebert's opinion that Turko could not perform work activity as a nurse assistant. However, Dr. Ebert's limitations listed in February 2014, including the inability to work any hours in a typical workday and the need to elevate her legs during the workday, were not consistent with Turko's clinical presentations, the examination findings, and Turko's conservative treatment history through the LDI. Indeed, in February 2014, Dr. Ebert noted that Turko's musculoskeletal and neurological findings were "normal," her neck was "supple," and no clinical abnormality was recorded. [ECF No. 12-10, Tr. 456-57].

Similarly, the ALJ gave partial weight to the opinion of Dr. Lerchin. [ECF No. 12-8, Tr. 325-30]. The ALJ comprehensively discussed Dr.

Lerchin's findings, noting that Turko was independent in her activities of daily living and ambulation; she was in no acute distress; she was able to complete tandem gait, heel and toe walking; had intact sensation; and had strength of 5/5 throughout. [*Id.*] Dr. Lerchin also indicated that Turko had intact coordination and was negative for straight leg raising. [*Id.*, Tr. 326]. While Turko had a limited range of motion of her cervical spine, which was consistent with her history of cervical fusion, she had full range of motion in her lumbar spine. [*Id.*] She also had full range of motion in her elbows bilaterally and full range of motion of the small joints of both hands. [*Id.*] Dr. Lerchin concluded that the restrictions in the RFC were consistent with the clinical findings reported through the LDI. [*Id.*] The ALJ also noted that Turko may have exhibited malingering regarding the range of motion in her cervical spine during a June 2013 emergency room visit. [ECF No. 12-8, Tr. 306]. *See McGrath v. Comm'r of Soc. Sec.*, No. 12-cv-11267, 2013 WL 4507948, at *17 (E.D. Mich. Aug. 23, 2013) (a claimant's credibility is undermined by demonstrating less than full effort during testing). Rather than showing a reduced range of motion, emergency room physician Michael Sytsma, D.O., noted that clinical presentation of Turko's cervical spine was "completely fine without any obvious pain." [ECF No. 12-8, Tr. 306]. Evidence from *after* the LDI shows a reduced cervical range of

13

motion in rotation, though Turko's neck continued to be described as "supple," she was deemed neurologically intact, and was progressing well in physical therapy. [ECF No. 12-10, Tr. 423-24; ECF No. 12-9, Tr. 400].

Because Turko has not developed her treating physician argument, and because a review of the ALJ's opinion and the record shows that the ALJ's weighing of the opinion evidence is supported by substantial evidence, the ALJ's decision should be affirmed.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 21] be **GRANTED**; that Turko's motion [ECF No. 15] be **DENIED** and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

                                                  s/Elizabeth A. Stafford
                                                  ELIZABETH A. STAFFORD
Dated: June 13, 2018                 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 13, 2018.

                                         s/Marlena Williams
                                         MARLENA WILLIAMS
                                         Case Manager